UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALTIMEO ASSET MANAGEMENT,
Individually and On Behalf of All Others
Similarly Situated,

                Plaintiff,

     v.

WUXI PHARMATECH (CAYMAN) INC.,
GE LI, EDWARD HU, NING ZHAO,
XIAOZHONG LIU, ZHAOHUI ZHANG,
NEW WUXI LIFE SCIENCE HOLDINGS
LIMITED, NEW WUXI LIFE SCIENCE
LIMITED, WUXI MERGER LIMITED,
G&C PARTNERSHIP L.P., ABG II-WX
LIMITED, BOYU CAPITAL FUND II, L.P.,
HILLHOUSE CAPITAL FUND II, L.P.,
PING AN LIFE INSURANCE COMPANY
OF CHINA. LTD., TEMASEK LIFE
SCIENCES PRIVATE LIMITED, G&C IV
LIMITED, YINFU CAPITAL
MANAGEMENT CO., YUNFENG II WX
LIMITED, SEQUOIA CAPITAL CHINA
GROWTH FUND III, L.P., CONSTANT
CYPRESS LIMITED, and SPDB
INTERNATIONAL HOLDINGS LIMITED,

                Defendants.

Case No.:  1:19-cv-01654-AJN

---

**SPONSOR DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................... vii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND FACTS AND ALLEGATIONS ................................................. 3

     A.    The Sponsor Defendants .................................................................. 3

     B.    The WuXi Proxy Statement And The Transaction Statement ........ 4

     C.    The Re-Listings Of Some Of The Company's Businesses Post-Merger ........ 6

     D.    Plaintiff's Action ............................................................................. 6

ARGUMENT ........................................................................................................ 7

    I.    PLAINTIFF'S SECTION 10(B) CLAIMS ARE TIME-BARRED ........... 7

    II.    PLAINTIFF'S SECTION 10(B) CLAIMS FAIL TO STATE A CLAIM .............. 10

     A.    Plaintiff Fails To Plead Particularized Facts Raising The Requisite Strong Inference Of Scienter As To The Sponsor Defendants ................................ 10

         1.    *Plaintiff Fails To Plead Motive And Opportunity To Commit Fraud As To The Sponsor Defendants* ............................................................. 11

         2.    *Plaintiff Fails To Plead Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness* ............................................................. 12

     B.    Plaintiff Also Fails To Allege Any Actionable Misstatements Or Omissions As To Sponsor Defendants .......................................................... 16

         1.    *WuXi Press Release, WuXi Earnings Call, And WuXi Investor Presentation* ....................................................................................... 17

         2.    *WuXi Proxy Statement* ....................................................................... 17

    III.    PLAINTIFF'S SECTION 20A CLAIMS AGAINST THE SPONSOR DEFENDANTS FAIL .............................................................................. 23

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

15 U.S.C. § 78t-1(a) ........................................................................................... 23

15 U.S.C. § 78u-4(b)(2) ...................................................................................... 10

28 U.S.C. § 1658 ................................................................................................. 2, 8

17 C.F.R. § 240.13e-3 ......................................................................................... 4, 5

17 C.F.R. § 240.13e-100 ..................................................................................... 5

**Cases**

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995) ............................................................................ 11-12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 21

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) ......................................................................... 2

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*,
    967 F. Supp. 2d 771 (S.D.N.Y. 2013) ......................................................... 24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ........................................................................... 2, 6

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003) ......................................................................... 23

*Donoghue v. Am. Skiing Co.*,
    155 F. Supp. 2d 70 (S.D.N.Y. 2001) ........................................................... 8-9

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018) ......................................................... 21

*Garber v. Legg Mason, Inc.*,
    347 F. App'x 665 (2d Cir. 2009) ................................................................. 6

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
 639 F. App'x 664 (2d Cir. 2016) ............................................................. 18

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
 68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd,* 639 F. App'x 664 (2d Cir. 2016)....... 9, 19

*In re AIG Advisor Grp. Sec. Litig.*,
 309 F. App'x 495 (2d Cir. 2009) ............................................................. 21

*In re Barrick Gold Corp. Sec. Litig.*,
 341 F. Supp. 3d 358 (S.D.N.Y. 2018)....................................................... 16

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
 763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................................................... 25

*In re DDAVP Direct Purchaser Antitrust Litig.*,
 585 F.3d 677 (2d Cir. 2009)................................................................. 13

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
 2017 WL 4049253 (S.D.N.Y. June 28, 2017) ....................................... 19-20

*In re Fannie Mae 2008 Sec. Litig.*,
 891 F. Supp. 2d 458 (S.D.N.Y. 2012)................................................. 18, 19

*In re Federated Dep't Stores, Inc. Sec. Litig.*,
 No. 00 CV 6362 (RCC), 2005 WL 696894 (S.D.N.Y. Mar. 25, 2005) ............... 14

*In re Federated Dep't Stores, Inc., Sec. Litig.*,
 No. 00 CV 6362 (RCC), 2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) ............ 13-14

*In re GMR Sec. Litig.*,
 2013 WL 3781509 (S.D.N.Y. July 19, 2013) (Nathan, J.) ............................. 23

*In re Magnum Hunter Resources Corp. Sec. Litig.*,
 616 F. App'x 442 (2d Cir. 2015) .............................................................. 9

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
 26 F. Supp. 3d 278, 301 (S.D.N.Y. 2014), *aff'd,* 616 F. App'x 442 (2d Cir.
 2015) .......................................................................................... 9-10

*In re Merrill Lynch Auction Rate Sec. Litig.*,
 851 F. Supp. 2d 512 (S.D.N.Y. 2012), *aff'd sub nom. Louisiana Pac. Corp. v.
 Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014) .................................... 9

*In re Openwave Sys. Sec. Litig.*,
       528 F. Supp. 2d 236 (S.D.N.Y. 2007)........................................................ 23-24

*In re PXRE Grp., Ltd., Sec. Litig.*,
       600 F. Supp. 2d 510 (S.D.N.Y. 2009)........................................................ 23

*In re UBS AG Sec. Litig.*,
       2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd,* 752 F.3d 173 (2d Cir.
       2014) ........................................................................................................... 17

*Janus Capital Grp., Inc. v. First Derivative Traders*,
       564 U.S. 135 (2011)..................................................................... 3, 17, 18, 19

*Kalnit v. Eichler*,
       264 F.3d 131 (2d Cir. 2001)............................................................ 10, 12-13, 14

*Kaplan v. Lazard Freres & Co., LLC*,
       234 F.3d 1262 (2d Cir. 2000)................................................................... 8

*Koncelik v. Savient Pharm., Inc.*,
       No. 08 CIV. 10262 (GBD), 2010 WL 3910307 (S.D.N.Y. Sept. 29, 2010)........... 20

*Kramer v. Time Warner Inc.*,
       937 F.2d 767 (2d Cir. 1991)...................................................................... 2, 6

*Krasner v. Rahfco Funds LP*,
       2012 WL 4069300 (S.D.N.Y. Aug. 9, 2012)........................................... 18

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
       897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd,* 543 F. App'x 72 (2d Cir. 2013)....... 15

*LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*,
       318 F.3d 148 (2d Cir. 2003)................................................................... 8

*Lorenzo v. SEC*,
       139 S. Ct. 1094 (2019)............................................................................ 19

*Matrixx Initiatives, Inc. v. Siracusano*,
       563 U.S. 27 (2011)................................................................................... 10

*Merck & Co., Inc. v. Reynolds*,
       559 U.S. 633 (2010)................................................................................. 7

*Novak v. Kasaks,*
    216 F.3d 300 (2d. Cir 2000)..................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
    135 S. Ct. 1318 (2015)................................................................... 21, 22

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)......................................................... 12

*Phillips v. LCI Int'l, Inc.,*
    190 F.3d 609 (4th Cir. 1999) .................................................................. 11

*Rich v. Maidstone Fin., Inc.,*
    No. 98 CIV. 2569 (DAB), 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) .............. 11

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004).................................................................... 20

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
    573 F.3d 98 (2d Cir. 2009) ..................................................................... 13

*Sabratek Corp. v. Keyser,*
    No. 99 CIV. 8589 (HB), 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000).................. 11

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies,*
    *Inc.,*
    75 F.3d 801 (2d. Cir. 1996).................................................................... 14

*Scone Invs., L.P. v. Am. Third Mkt. Corp.,*
    No. 97 Civ 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998).................. 25

*Silva Run Worldwide Ltd. v. Bear Stearns & Co., Inc.,*
    No. 96 CIV. 5102 (WK), 2000 WL 1672324 (S.D.N.Y. Nov. 6, 2000)................. 10-11,
    15

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.,*
    531 F.3d 190 (2d Cir. 2008)..................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)........................................................................... 11, 16

*Tongue v. Sanofi,*
    816 F.3d 199 (2d Cir. 2016).................................................................. 21, 23

*Wyche v. Advanced Drainage Sys., Inc.*,
   No. 15 Civ. 5955 (KPF), 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017),
   *aff'd*, 710 F. App'x 471 (2d Cir. 2017) ................................................................ 14, 15-16

*Zech Capital LLC v. Ernst & Young Hua Ming*,
   636 F. App'x 582 (2d Cir. 2016) ............................................................................   10

## TABLE OF ABBREVIATIONS

| TERM | DEFINITION |
|---|---|
| AC | Consolidated Amended Class Action Complaint filed in this action on August 5, 2019, ECF No. 39 |
| ADS (plural "ADSs") | American Depository Share |
| Boyu | Boyu Capital Fund II, L.P. |
| Buyer Group | The Sponsor Defendants, Other Sponsors, and WuXi Individuals, together with entities referred to in the Proxy Statement as "Holdco," "Parent," and "Merger Sub" |
| Complaint | Original Complaint filed in this action on February 21, 2019, ECF No. 1 |
| Defendants | Sponsor Defendants, Other Sponsors, WuXi, WuXi Individuals, and Edward Hu |
| G&C Entities | G&C Partnership L.P. and G&C IV Limited |
| G&C IV | G&C IV Limited |
| G&C Partnership | G&C Partnership L.P. |
| Hillhouse | Hillhouse Capital Fund II, L.P. |
| Insider Trading Defendants | WuXi, the WuXi Individuals, the Sponsor Defendants, and the Other Sponsors |
| Merger | Go-private transaction in December 2015 involving the acquisition of WuXi and delisting of the ADSs of WuXi |
| Mukhi Decl. | Declaration of Rahul Mukhi, dated October 7, 2019 |
| Other Sponsors | Other Defendant investment entities that have not yet been served in this action:  ABG II-WX Limited, Yinfu Capital Management Co., Ltd., Yunfeng II WX Limited, Constant Cypress Limited, SPDB and International Holdings Limited. |
| Ping An | Ping An Life Insurance Company of China, Ltd. |
| Plaintiff | Altimeo Asset Management |

| TERM | DEFINITION |
|---|---|
| Proxy Statement | Preliminary, amended and final proxy statements filed by WuXi on September 1, 2015, September 23, 2015, October 9, 2015, and October 20, 2015.  As used herein, the "Proxy Statement" includes all versions of the proxy, but, for the sake of simplicity, the brief cites to the October 20, 2015 proxy as that was the operative proxy for the shareholder vote. |
| PSLRA | Private Securities Litigation Reform Act |
| Salceda Decl. | Declaration of Ignacio E. Salceda, dated October 7, 2019 |
| SEC | United States Securities and Exchange Commission |
| Sequoia | Sequoia Capital China Growth Fund III, L.P. |
| Sponsor Defendants | Boyu, G&C Partnership, G&C IV, Hillhouse, Ping An, Sequoia, and Temasek |
| Temasek | Temasek Life Sciences Private Limited |
| Transaction Statement | SEC Schedule 13E-3 and amendments thereto attached as Exhibits A through E of the Mukhi Decl.  As used herein, the "Transaction Statement" includes all versions of the transaction statements, but, for the sake of simplicity, the brief cites to the October 20, 2015 transaction statement. |
| WuXi or the Company | WuXi Pharmatech (Cayman) Inc. |
| WuXi AppTec or AppTec | WuXi AppTec, a WuXi subsidiary |
| WuXi Biologics or Biologics | WuXi Biologics, a WuXi subsidiary |
| WuXi Brief or WuXi Br. | Memorandum of Law in Support of the Motion to Dismiss filed by WuXi, dated October 7, 2019 |
| WuXi Individuals | Ge Li, Xiaozhong Liu, Zhaohui Zhang, and Ning Zhao |

The Sponsor Defendants respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the AC pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and the PSLRA, and further join in the arguments submitted by WuXi as applicable.[1]

## PRELIMINARY STATEMENT

As set forth by WuXi in its separate brief, this case asserting alleged violations of the U.S. securities laws is illogically predicated on an expressly *disclosed* omission.  That alleged omission at the core of Plaintiff's claim—regarding whether WuXi may later spin off subsidiaries and list them on the Asian stock exchanges—was squarely disclosed in WuXi's own Proxy Statement.  The real purpose of this suit appears to be nothing more than to complain about being left out of the increased value attained on the Asian stock markets almost four years *after* the go-private merger—something Plaintiff had no legal right to and has no viable legal basis to complain about, and certainly not under the U.S. securities laws.

Even if that were not the case, Plaintiff still fails to state a claim against the Sponsor Defendants.  They are all foreign investment entities that merely participated as investors in the go-private transaction, and were not makers of any statements that can be challenged by Plaintiff.  As required for certain go-private transactions, the Sponsor Defendants filed a SEC Schedule 13E-3 (known as a "Transaction Statement"), which disclosed certain information concerning the Merger and the Sponsor Defendants' participation.  While the Transaction Statement incorporated by reference the Proxy Statement sent by WuXi (also a "Filing Person" of the Transaction Statement), it explicitly disclaimed that "[a]ll information contained in this transaction statement concerning each Filing Person has been supplied by such Filing Person,

---

[1] Specifically, the Sponsor Defendants join in and adopt the arguments made by WuXi that: (1) Plaintiff has not alleged the existence of any false or misleading statements or omissions; (2) Plaintiff failed to plead economic loss and loss causation; (3) Plaintiff has not adequately alleged reliance; and (4) Plaintiff's claims involve impermissible extraterritorial application of the U.S. securities laws.  *See* WuXi Br. at 7-15, 21-25.

and *no Filing Person has produced any disclosure with respect to any other Filing Person*." Mukhi Decl., Ex. D at 2 (emphasis added).[2]  Thus, consistent with settled securities law that persons are only "makers" of statements that are attributable to them, the Transaction Statement explicitly stated that the Sponsor Defendants were not producing any disclosures with respect to WuXi.  That alone is grounds for dismissing the claims against the Sponsor Defendants.

In addition to arguments set forth by WuXi applicable to the Sponsor Defendants, the AC fails to state a claim against the Sponsor Defendants for four additional and independent reasons.

*First*, Plaintiff's Section 10(b) and Rule 10b-5 claims are time-barred as against all Defendants.  Under 28 U.S.C. § 1658, such claims must be brought within *two years* after Plaintiff became aware or should have become aware of the facts constituting the alleged violation.  The gravamen of Plaintiff's claims is the alleged failure to disclose an alleged post-Merger plan to spin off and re-list WuXi subsidiaries on the Asian stock markets.  Not only was that prospect disclosed in the Proxy Statement, Plaintiff's own allegations establish that Plaintiff had notice of its claim by at least January 4, 2017—the date of the public filing of an application for the listing on the Hong Kong Stock Exchange of WuXi Biologics, the spinoff and re-listing of a WuXi subsidiary at the heart of Plaintiff's claims.  Thus, Plaintiff indisputably had notice of the alleged violation more than two years before it filed the original Complaint on February 21, 2019.  Plaintiff's Section 10(b) and Rule 10b-5 claims are therefore time-barred.

*Second*, Plaintiff fails to plead particularized facts alleging that the Sponsor Defendants possessed the required "strong inference" of scienter to commit securities fraud.  The AC is completely silent with respect to any particularized allegations—as is required—that any of the

---

[2] On a motion to dismiss, the Court may consider, *inter alia*, documents that are "integral" to the AC, documents incorporated in the AC by reference, documents filed with the SEC, and matters of which judicial notice can be taken.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Sponsor Defendants knowingly made or knew of any misstatements to investors, including concerning the post-Merger intentions of WuXi and/or the Sponsor Defendants.  Instead, the AC impermissibly resorts to generalized and grouped allegations of conclusory assertions of scienter that courts have uniformly rejected as insufficient under the requirements of Section 10(b) and Rule 10b-5.

*Third*, Plaintiff fails to adequately allege any actionable misstatements made by the Sponsor Defendants.  Under the Supreme Court's precedent in *Janus*, in order to state a claim under Section 10(b) and Rule 10b-5, Plaintiff must plead that the defendants were "makers" of the challenged statements by having "ultimate authority" over the statements.  *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  Plaintiff does not and cannot allege that the Sponsor Defendants were "makers" of the alleged misstatements in WuXi's press release, WuXi's earnings call, WuXi's investor presentation, or statements attributed to WuXi in the Proxy Statement.  As to any remaining challenged statements, none are actionable against the Sponsor Defendants because they were not false or misleading as a matter of law.

*Finally*, Plaintiff fails to state an insider trading claim under Section 20A because, in addition to failing to plead a predicate Section 10(b) violation, Plaintiff has not alleged that any Sponsor Defendant itself purchased WuXi securities from investors, much less that they made any such purchases while in possession of material, nonpublic information about the Company.

## BACKGROUND FACTS AND ALLEGATIONS[3]

### A.    The Sponsor Defendants

The Sponsor Defendants participated as investors in the Merger, along with the Other Sponsors and the WuXi Individuals.  AC ¶ 81.  Of the Sponsor Defendants, the G&C Entities are

---

[3] The background of the Merger and allegations in the AC are set forth in detail in the WuXi Brief at 2-5.

Cayman entities affiliated with the WuXi Individuals.  AC ¶¶ 82-83.  Boyu, Hillhouse, and

Sequoia are third-party Cayman funds.  AC ¶¶ 34, 35, 41.  Ping An is a third-party Chinese fund.

AC ¶ 36.  Temasek is a third-party Singaporean investment company.  AC ¶ 37.

    Pursuant to the terms of the Merger, entities referred to in the Proxy Statement as

"Holdco," "Parent," and "Merger Sub" were created for purposes of effectuating the Merger.

AC ¶ 81.  The Sponsor Defendants, Other Sponsors, and the WuXi Individuals together

beneficially owned Holdco, which in turn owned Parent, which in turn wholly owned the

surviving WuXi entity after it merged with and into Merger Sub.  *See* Mukhi Decl., Ex. D at 1.

Pursuant to the terms of the Merger, Merger Sub was merged with and into the Company, with

the Company continuing as the surviving company.  *See id.*

**B.      The WuXi Proxy Statement And The Transaction Statement**

    Between September 1, 2015 and November 20, 2015, following the execution of the

merger agreement and prior to the shareholder vote, the Company filed preliminary, amended,

and final proxy statements.  AC ¶¶ 213-14, 293, 297, 301, 318.  The then-participating Sponsor

Defendants, along with WuXi and the WuXi Individuals, also filed a Schedule 13E-3

Transaction Statement and amendments thereto.  AC ¶¶ 214, 295, 299, 303, 319.[4]  A Schedule

13E-3 is a SEC disclosure form required under certain circumstances to be filed in the event of a

transaction that will result in the delisting of a public security (*i.e.*, a go-private transaction),

including where an issuer or its affiliate is purchasing the equity securities of such issuer.  *See* 17

C.F.R. § 240.13e-3.  Here, the Schedule 13E-3 filing was triggered because certain members of

the Buyer Group were affiliated with WuXi.  17 C.F.R. § 240.13e-3(a).

---

[4] The composition of the Buyer Group changed over time, and the new parties were added to the amendments to the
Transaction Statement and the definition of Buyer Group in the Proxy Statement.  *See* AC ¶¶ 75-79.

A Schedule 13E-3 disclosure must "incorporate by reference the information contained in the proxy . . . in answer to the items of [the] statement."  17 C.F.R. § 240.13e-100; *see also* 17 C.F.R. § 240.13e-3.  Accordingly, the Transaction Statement incorporated by reference and attached as an exhibit the Proxy Statement (preliminary, amended, or final).  AC ¶ 213; Mukhi Decl., Ex. D at 2, 11.  The Transaction Statement stated that "*[t]he Company* will make available to its shareholders a proxy statement."  *Id.* at 2 (emphasis added).  The Transaction Statement also disclaimed that "[a]ll information contained in this transaction statement concerning each Filing Person has been supplied by such Filing Person, and no Filing Person has produced any disclosure with respect to any other Filing Person."  *Id.*  In other words, the Transaction Statement made clear that each individual Filing Person, including the Company, was *alone* the maker of statements about *itself*.  The various amendments to the Transaction Statement filed between September 2015 and November 2015 reflected amendments to the Proxy Statement and updates to the composition of the Buyer Group.  *See* Mukhi Decl., Exs. A-E.

All the statements made in the Proxy Statement were attributed to the Company, with just two limited exceptions.  The Buyer Group made certain required disclosures under Rule 13e-3 regarding the "Position of the Buyer Group as to the Fairness of the Merger" and the "Purposes of and Reasons for the Merger—The Buyer Group."  Salceda Decl., Ex. C at 34, 49.[5]  In providing these disclosures, the Buyer Group also disclosed that it "has interests in the merger that are different from, and/or in addition to, those of the other shareholders or holder of ADSs of the Company by virtue of [the Buyer Group's] continuing interests in the Surviving Company after the completion of the merger."  *Id.* at 34; *see also id.* at 61 (WuXi disclosing that "each member of the buyer group will directly or indirectly enjoy the benefits from any future earnings

---

[5] The Company itself made a separate disclosure with respect to its Purposes and Reasons for the Merger.  Salceda Decl., Ex. C at 50.

and growth of the Company after the merger which, if the Company is successfully managed, could exceed the value of their original investments in the Company.").

## C.     The Re-Listings Of Some Of The Company's Businesses Post-Merger

In the Proxy Statement, WuXi expressly disclosed that "[t]he buyer group may consider re-listing the Company's equity on the Chinese or Hong Kong stock exchanges, which may have higher valuations."  AC ¶ 226.  This is what happened on January 4, 2017, when Biologics, originally part of a WuXi business unit, filed for listing on the Hong Kong Stock Exchange.  AC ¶ 147; Mukhi Decl., Ex. F (showing filing of Biologics' "application proof" for listing on January 4, 2017); *id.*, Ex. G (excerpt of January 4, 2017 Biologics application proof filing).[6]  On June 6, 2017, Biologics began trading on the Hong Kong Stock Exchange.  AC ¶¶ 17, 61, 141.  On May 8, 2018, a portion of AppTec was listed on the Shanghai stock exchange.  *Id.* ¶¶ 17, 145.

## D.     Plaintiff's Action

Plaintiff filed the Complaint on February 21, 2019, claiming that the Defendants failed to disclose an alleged post-Merger plan to spin off and re-list WuXi subsidiaries on the Asian stock markets.  ECF No. 1.  Plaintiff filed the AC on August 5, 2019, based on substantially the same central allegations, ECF No. 39, claiming that Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Count One), AC ¶¶ 394-404, and that the Sponsor Defendants, WuXi, and the WuXi Individuals engaged in insider trading in connection with the Merger, in violation of Section 20A of the Exchange Act (Count Two), AC ¶¶ 405-11.

With respect to the Section 10(b) and Rule 10b-5 claim, Plaintiff alleges material misstatements and/or omissions were made in:  (1) a WuXi press release announcing the Merger

---

[6] Biologics' Hong Kong listing application is incorporated into, and integral to, the AC.  *See* AC ¶ 147.  The Court may also take judicial notice of the public filing, which is similar to a SEC registration statement for a U.S. IPO. *See Garber* v. *Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (taking judicial notice of SEC filings); *Kramer*, 937 F.2d at 774 (same).

(AC ¶¶ 204-10); (2) a WuXi earnings call (AC ¶¶ 211-12); (3) a WuXi investor presentation (AC ¶¶ 305-17); and (4) the Proxy Statement (AC ¶¶ 213-304, 318-20).  With respect to the first three documents, Plaintiff does not allege anywhere that the Sponsor Defendants made or participated in any of the alleged misstatements.

With respect to the fourth category, the Proxy Statement, the AC alleges misstatements falling into five categories:  (1) "Statements Concerning Intention Not to Relist" (AC ¶¶ 216-27); (2) "Statements Concerning Lack of Alternatives to the Merger" (AC ¶¶ 228-36); (3) "Statements Concerning Defendants' Reasons for the Merger" (AC ¶¶ 278-86); (4) "False Representations that the Merger Was 'Fair'" (AC ¶¶ 237-71); and (5) "Promotion of the Merger Price" (AC ¶¶ 272-77).[7]  Of these, only certain challenged statements concerning (3) "Statements Concerning Defendants' Reasons for the Merger" and (4) "False Representations that the Merger Was 'Fair'" are alleged to be attributed to the Buyer Group, and thereby the Sponsor Defendants.  AC ¶¶ 266, 268, 270, 283.  As to all other challenged statements, there is no allegation even attempting to link the Sponsor Defendants.

## ARGUMENT

## I.   PLAINTIFF'S SECTION 10(B) CLAIMS ARE TIME-BARRED

Under 28 U.S.C. § 1658, Section 10(b) and Rule 10b-5 claims cannot be brought more than two years after "the discovery of the facts constituting the violation."  28 U.S.C. § 1658. Discovery "refers not only to a plaintiff's *actual* discovery of certain facts, but also to the facts that a reasonably diligent plaintiff would have discovered."  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644 (2010) (emphasis in original).  The initial Complaint in this action was filed on

---

[7] Plaintiff alleges a sixth category of misstatements, "Defendants Specifically Guaranteed the Accuracy of Their Statements and That They Complied With Law," AC ¶ 287, but this is not another separate alleged misstatement, as Plaintiff merely alleges that the Sponsor Defendants certified that the information in the Transaction Statement was true and accurate.  *Id.*  Other than statements in the Proxy Statement incorporated by reference, Plaintiff does not allege any other misstatements in the Transaction Statement.

February 21, 2019, so the applicable inquiry is whether Plaintiff knew or should have known of the alleged facts constituting the claimed violation by February 20, 2017.  *See LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003) (where "the facts needed for determination of when a reasonable investor of ordinary intelligence" would have been aware of the existence of the alleged fraud "can be gleaned from the complaint and papers . . . resolution of the issue on a motion to dismiss is appropriate") (citation omitted).

Plaintiff's own pleadings establish that by January 4, 2017, the facts undergirding their claims were or should have been known to it and any reasonable investor (and *a fortiori* a self-described "highly sophisticated"[8] one).  *See* AC ¶ 147 (alleging news coverage of "WuXi Biologics' January 4, 2017 filing for its Hong Kong IPO as the next step following the completion of the Merger on December 10, 2015").  Plaintiff's claims are premised on the alleged failure to disclose in the Proxy Statement a plan to spin off and re-list WuXi subsidiaries on the Asian stock markets.  *See, e.g.*, AC ¶ 115 ("Defendants' most fundamental misleading action was hiding its plan to spin-off and relist WuXi's subsidiaries in Hong Kong and China following the Merger.").  On January 4, 2017—more than two years before Plaintiff filed its Complaint—WuXi Biologics indisputably filed a public application for listing in Hong Kong, making known any "plan to spin-off and relist WuXi's subsidiaries" by at least that date, and rendering Plaintiff's action untimely.  *See Merck*, 559 U.S. at 653; *see also, e.g.*, *Kaplan v. Lazard Freres & Co., LLC*, 234 F.3d 1262 (2d Cir. 2000) (summary order) (where plaintiff alleged that companies falsely represented that they had no plans to change corporate structure, a reasonable investor would have been able to ascertain the putative falsehood of the representation no later than when change in corporate structure became public); *Donoghue v.*

---

[8] Dkt. No. 9 at 7.

*Am. Skiing Co.*, 155 F. Supp. 2d 70, 75-76 (S.D.N.Y. 2001) (dismissing complaint where plaintiff was put on notice of facts underlying alleged violations through defendants' public disclosures outside the statute of limitations period).

The Complaint itself pleads that on January 4, 2017, Biologics "fil[ed] for its Hong Kong IPO." AC ¶ 147. Not only was the filing itself public, but also Biologics' filing for listing received substantial press coverage.[9] Thus, the alleged factual basis of Plaintiff's claims—the supposed non-disclosure in the Proxy Statement of an alleged "pre-ordained plan and its whole reason for the Merger," AC ¶ 227—was known to Plaintiff, or should have been, by at least January 2017. *See Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 535-36 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016) (in a statute of limitations analysis "a reasonably diligent plaintiff would undertake an investigation based on . . . news articles and analyst's reports and prospectuses, quarterly reports, and other information related to their investments") (citations omitted).

The subsequent listing of AppTec in May 2018 did not restart the statute of limitations, because Biologics's listing in January 2017 had already provided Plaintiff sufficient information to discover the facts constituting the alleged violation. *See In re Magnum Hunter Resources Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) ("[W]e have never permitted the statute of limitations to be tolled until a company's disclosures touch on every specific allegation that a plaintiff chooses to put in his complaint."); *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 301 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015) (earlier public

---

[9] *See, e.g.*, Jonathan Breen, *WuXi BioLogics heads to Hong Kong for $300m IPO*, Global Capital (Jan. 5, 2017) (Mukhi Decl., Ex. H); Danny Leung, *Wuxi Biologics readies Hong Kong relisting*, FinanceAsia (Jan. 6, 2017) (Mukhi Decl., Ex. I). The Court may take judicial notice of information published in news outlets for the purpose of establishing that the information was publicly available. *See, e.g.*, *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 526 n.4 (S.D.N.Y. 2012), *aff'd sub nom. Louisiana Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014) (taking judicial notice of news articles for the purpose of demonstrating the existence of information in the market).

disclosure "constituted a 'constellation of facts' sufficient for plaintiffs to plead each element of [the] Securities Act claims and to put reasonable investors on notice of the Securities Act claims").  Accordingly, on the face of the Complaint, Plaintiff's Section 10(b) claims are time-barred under the two-year statute of limitations.

## II.    PLAINTIFF'S SECTION 10(B) CLAIMS FAIL TO STATE A CLAIM

To state a claim under Section 10(b) and Rule 10b-5, Plaintiff must adequately allege, *inter alia*, that the Sponsor Defendants:  (1) made material misstatements or omissions, (2) with scienter.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).  As set forth below, Plaintiff does not state a Section 10(b) and Rule 10b-5 claim against the Sponsor Defendants because:  (i) Plaintiff fails to plead particularized facts supporting the requisite "strong inference" of scienter by the Sponsor Defendants, and (ii) Plaintiff fails to allege that the Sponsor Defendants made any actionable misstatements or omissions.

### A.    Plaintiff Fails To Plead Particularized Facts Raising The Requisite Strong Inference Of Scienter As To The Sponsor Defendants

To adequately plead scienter under Section 10(b) and Rule 10b-5, a complaint must, "with respect to each act or omission alleged . . . state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added); *Zech Capital LLC v. Ernst & Young Hua Ming*, 636 F. App'x 582, 583 (2d Cir. 2016) (citation omitted).

The strong inference of scienter may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (citation omitted).  Moreover, "facts must be alleged which particularize how and why each defendant actually knew, or was reckless in not knowing,

that the statements were false at the time made." *Silva Run Worldwide Ltd. v. Bear Stearns & Co., Inc.*, No. 96 CIV. 5102 (WK), 2000 WL 1672324, at *4 (S.D.N.Y. Nov. 6, 2000). "A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)." *Rich v. Maidstone Fin., Inc.*, No. 98 CIV. 2569 (DAB), 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001) (citation and internal quotation omitted).  In order to meet the requirement that the inference be "strong," the inference as to each defendant separately "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007).  Plaintiff has not satisfied any of these requirements.

### 1.    *Plaintiff Fails To Plead Motive And Opportunity To Commit Fraud As To The Sponsor Defendants*

The AC fails to plead particularized facts alleging that any of the Sponsor Defendants had motive and opportunity to commit fraud.  Plaintiff's only attempt to do so is the generalized allegation that "the Sponsor Defendants had a strong motive to commit fraud because they received substantial stakes in WuXi following the Merger."  AC ¶ 342.  But, as courts have consistently held, a desire common to most corporate actors does not establish motive sufficient to support a strong inference of scienter under the securities laws.  *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (rejecting motive allegation common to "virtually every company in the United States"); *Sabratek Corp. v. Keyser*, No. 99 CIV. 8589 (HB), 2000 WL 423529, at *5 (S.D.N.Y. Apr. 19, 2000) ("An alleged motivation to inflate stock prices does not provide the strong inference of scienter required under the PSLRA, and the reverse is equally true."); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 622 (4th Cir. 1999) (plaintiffs' allegations that director sought to depress the stock price to assure the success of a merger did not constitute an adequate motive).  The desire of a buyer in a merger to complete the merger successfully and

obtain a valuable stake in the acquired company is common to all buyers, and if scienter could be pleaded on that basis alone, virtually every successful buyer in a go-private transaction "could be forced to defend securities fraud actions." *Acito*, 47 F.3d at 54.[10]

Even if Plaintiff did allege motive, Plaintiff may not simply lump together the Sponsor Defendants to satisfy this requirement. *Compare Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 187 (S.D.N.Y. 2006) ("Plaintiffs must state with particularity facts giving rise to a strong inference that *each defendant* acted with scienter") (emphasis added) (internal quotation omitted) *with* AC ¶ 342 (alleging that, as a group, "the Sponsor Defendants had a strong motive to commit fraud because they received substantial stakes in WuXi following the Merger"). That is, "plaintiffs may not use collective references to a group of defendants as a pleading technique to blur important distinctions among defendants and evade the requirement that fraud be pled with particularity." *Pension Comm. of Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 187 n.167. Accordingly, Plaintiff has not adequately alleged motive on the part of the Sponsor Defendants.

### 2. Plaintiff Fails To Plead Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness

With no motive, Plaintiff must offer "correspondingly greater" facts establishing a "strong inference" that is "at least as compelling as an opposing inference of nonfraudulent intent" that the Sponsor Defendants "conscious[ly] misbehav[ed]" or recklessly defrauded shareholders. *Kalnit*, 264 F.3d at 142 (citation omitted). In order to allege conscious misbehavior or recklessness, a plaintiff must show that a defendant's conduct "is highly

---

[10] Plaintiff's assertion that the Sponsor Defendants "profited even further" because they funded a substantial portion of the purchase with debt rather than their own cash or equity gets it nowhere. AC ¶ 344. Plaintiff does not allege any facts showing there was anything improper about the unremarkable fact that the Sponsor Defendants borrowed funds to finance a multibillion dollar acquisition, or how the method of funding the merger is sufficient to create a strong inference of motive to commit securities fraud.

unreasonable and . . . represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Id.* (citation omitted).

The AC does not allege any facts supporting an inference that the Sponsor Defendants "consciously misbehaved" or recklessly defrauded investors.  Rather, the only facts that Plaintiff alleges are that the Sponsor Defendants "participated in the Buyer Group's due diligence leading up to the Merger," "signed confidentiality agreements that allowed them to access WuXi's confidential financial and business data, worked closely with Defendant Li to complete the Merger, and obtained confidential, non-public information [from] WuXi's management concerning the Company's financial performance."  AC ¶ 339.

As an initial matter, these allegations of scienter likewise fail because they do not even attempt to differentiate among the Sponsor Defendants.  *See, e.g.*, *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) (Both Rule 9(b) and the PSLRA require that "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.").

Furthermore, participation in routine conduct for buyers in a merger—conducting due diligence and signing confidentiality agreements—does not constitute circumstantial evidence that the Sponsor Defendants knew about or recklessly disregarded any alleged misstatements. *See S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 112 (2d Cir. 2009) (no strong inference of scienter where no allegation that defendant had knowledge that any representation was untrue; allegations that defendants "would" have learned the truth through due diligence were inadequate); *In re Federated Dep't Stores, Inc., Sec. Litig.*, No. 00 CV 6362 (RCC), 2004 WL 444559, at *6-7 (S.D.N.Y. Mar. 11, 2004) (rejecting plaintiffs' allegation that conducting

due diligence is circumstantial evidence of defendants' knowledge of the alleged fraud).  These allegations, without more, cannot establish the requisite "extreme departure from the standards of ordinary care."  *Kalnit*, 264 F.3d at 142.  Courts have likewise held that generalized scienter allegations based on defendants' access to confidential information are insufficient to survive a motion to dismiss.  *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.,* 75 F.3d 801, 812 (2d. Cir. 1996) ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed [unfavorable figures] is insufficient to survive a motion to dismiss."); *In re Federated Dep't Stores, Inc. Sec. Litig.*, No. 00 CV 6362 (RCC), 2005 WL 696894, at *5 (S.D.N.Y. Mar. 25, 2005) (allegations that defendants had access to financial reports and attended meetings where relevant facts were discussed "do not support an inference that Defendants had access to specific information contradicting their public statements").

Here, Plaintiff critically fails to:  (1) detail any specific confidential information to which the Sponsor Defendants had access; (2) allege that any such confidential information was contrary to any statements to investors; or (3) allege that, even if such information was contrary to such statements, any of the Sponsor Defendants were aware that this was the case.  *See Wyche v. Advanced Drainage Sys., Inc.*, No. 15 Civ. 5955 (KPF), 2017 WL 971805, at *14 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017) (plaintiff "must specifically identify the reports or statements containing [contrary] information" to which defendants had access) (citation omitted).  Plaintiff also does not allege that the Sponsor Defendants had any independent knowledge of WuXi's or the WuXi Individuals' future plans for WuXi aside from the information disclosed by WuXi in the Proxy Statement.  Nor does Plaintiff specify any particularized facts alleging that the Sponsor Defendants knowingly made statements about their

14

own intentions that were untrue at the time that they were made.  *See Silva*, 2000 WL 1672324, at *4 ("To establish scienter in misrepresentation cases, facts must be alleged which particularize *how and why* each defendant actually knew, or was reckless in not knowing, that the statements were false at the time made.") (emphasis added).  To the contrary, while Plaintiff makes the conclusory allegation that the Defendants "hid[] its plan to spin-off and relist WuXi's subsidiaries in Hong Kong and China following the Merger," AC ¶ 115, WuXi *specifically disclosed* that the "[t]he buyer group may consider re-listing the Company's equity on the Chinese or Hong Kong stock exchanges, which may have higher valuations."  Salceda Decl., Ex. C at 52; AC ¶ 226.  This disclosure refutes the allegation of an intention by any Defendant— including the Sponsor Defendants—to conceal the very fact that underpins Plaintiff's claims.  *See Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012), *aff'd*, 543 F. App'x 72 (2d Cir. 2013) (fulsome disclosure "negates an inference of scienter").[11]

Finally, "[t]o prove liability against a corporation, of course, a plaintiff must prove that an agent of the corporation committed a culpable act with the requisite scienter, *and* that the act (and accompanying mental state) are attributable to the corporation."  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (emphasis added).  Plaintiff has indisputably failed to do so here with respect to each of the Sponsors, which are corporations, fatally omitting any particularized allegation whatsoever of the requisite knowledge of each of the Sponsor Defendants' "employees, principals, or representatives."  AC ¶ 336; *see Wyche*, 2017 WL 971805, at *15 n.9 (finding plaintiff failed to clearly identify

---

[11] For the reasons explained by WuXi, the *post*-Merger re-listings, newspaper articles, and other allegations cited by Plaintiff at most allege "fraud by hindsight," which does not state a claim under the securities laws.  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d. Cir 2000); WuXi Br. at 11-12, 18-19.

unnamed employees with the requisite particularity that would permit the court to infer that their seniority was sufficient to impute scienter to the corporation).

In considering the scienter allegations against the Sponsor Defendants holistically, the Court must consider all inferences, including those "that could weigh against a finding of scienter." *Tellabs*, 551 U.S. at 323.  The more plausible inference here is that at the time of the Merger, the Sponsor Defendants reasonably and honestly believed that WuXi, as a private company, was a worthwhile investment for the reasons stated in the Proxy Statement (Salceda Decl., Ex. C at 49) and that the path to greater growth and success could include re-listing some of the Company's equity on the Asian stock exchanges in the future (*id.* at 52), to be determined in the future as market conditions warranted.  The complete absence of particularized factual allegations regarding each Sponsor Defendant's mental state is conspicuous.  "[T]hese individually insufficient allegations do not combine to create an inference of scienter sufficient to satisfy the PSLRA.  As the Second Circuit has recognized in a number of contexts, '[z]ero plus zero is zero.'"  *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018) (dismissing Section 10(b) complaint) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011)).  Taken as a whole, the AC's dearth of allegations falls far short of pleading a "cogent and compelling" inference of scienter against the Sponsor Defendants under *Tellabs*.

### B.    Plaintiff Also Fails To Allege Any Actionable Misstatements Or Omissions As To Sponsor Defendants

Plaintiff's Section 10(b) and Rule 10b-5 claims independently fail because the AC does not plead any actionable misstatements or omissions made by the Sponsor Defendants.

### 1.    *WuXi Press Release, WuXi Earnings Call, And WuXi Investor Presentation*

Plaintiff alleges that WuXi's August 14, 2015 press release announcing the Merger (AC ¶¶ 204-10), a WuXi earnings call that same day (AC ¶¶ 211-12), and a November 3, 2015 WuXi investor presentation (AC ¶¶ 305-17), contained false and misleading statements.  Plaintiff does not and cannot allege that the Sponsor Defendants had any involvement in preparing those WuXi documents, let alone that they had "ultimate authority" over the alleged misstatements, as required by *Janus*.  564 U.S. at 142.  Thus, Plaintiff's 10(b) and Rule 10b-5 claims based on these statements can be summarily dismissed as to the Sponsor Defendants.  *See, e.g.*, *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752 F.3d 173 (2d Cir. 2014) (dismissing 10(b) claims where no allegations that defendants made the challenged statements).

### 2.    *WuXi Proxy Statement*

Plaintiff identifies five categories of allegedly false and misleading statements in the Proxy Statement:  (1) "Statements Concerning Intention Not to Relist" (AC ¶¶ 216-27); (2) "Statements Concerning Lack of Alternatives to the Merger" (AC ¶¶ 228-36); (3) "Statements Concerning Defendants' Reasons for the Merger" (AC ¶¶ 278-86); (4) "False Representations that the Merger Was 'Fair'" (AC ¶¶ 237-71); and (5) "Promotion of the Merger Price" (AC ¶¶ 272-77).  None of these statements are actionable against the Sponsor Defendants.

*Statements Attributed to WuXi.*  Three of the five categories of statements are attributable to WuXi alone.  Plaintiff does not and cannot allege that (1) "Statements Concerning Intention Not to Relist" (AC ¶¶ 216-27), (2) "Statements Concerning Lack of Alternatives to the Merger" (AC ¶¶ 228-36), and (5) "Promotion of the Merger Price" (AC ¶¶ 272-77), were made by the Sponsor Defendants.  Indeed, each of these portions of the Proxy Statement was specifically

attributed to *WuXi alone*.[12]   Accordingly, none of these statements are actionable against the

Sponsor Defendants under *Janus*.  *See Janus*, 564 U.S. at 142-43 ("attribution within a statement

or implicit from surrounding circumstances is strong evidence that a statement was made by—

and only by—the party to whom it is attributed"); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*,

639 F. App'x 664, 669 (2d Cir. 2016) (affirming dismissal of Section 10(b) claims because

"allegations that the [private offering memorandum] was drafted with the approval and input of

some [defendants] is not sufficient to demonstrate the control essential to maker liability");

*Krasner v. Rahfco Funds LP*, 2012 WL 4069300, at *7 (S.D.N.Y. Aug. 9, 2012) (dismissing

10(b) claim where "no allegation that [defendant] 'made' any statements in the prospectus by

authoring or claiming authorship of the prospectus or that [defendant] had ultimate authority

over the statements in the prospectus").[13]

Not only were these statements attributed to the Company on the face of the Proxy

Statement, but the Transaction Statement also contained the express disclaimer that "[a]ll

information contained in this transaction statement concerning each Filing Person has been

supplied by such Filing Person, and *no Filing Person has produced any disclosure with respect*

---

[12] *See, e.g.*, AC ¶ 216 ("'If the merger is completed, *the Company* will continue its operations as a privately held company.'") (emphasis added); AC ¶ 229 ("'*Special Committee* determined that there was no viable alternative transaction to the proposed sale of the Company to the buyer group'") (emphasis added); AC ¶ 231 ("purpose of the *Special Committee* was 'to exclusively evaluate and, if appropriate, negotiate the proposed transaction'") (emphasis added); AC ¶ 273 ("*Special Committee's and the Board's* 'belief that the trading price of ADSs is not likely to reach or exceed the per ADS merger consideration in the near future'" based on "'*Special Committee's* knowledge and understanding of the Company and the industry in which the Company operates") (emphasis added); *see also* AC ¶ 331 (alleging the WuXi Individuals and Defendant Edward Hu "control[led] the content of the SEC filings . . . and had the ability and opportunity to prevent their issuance or cause them to be corrected").

[13] Any statements attributed to WuXi *about* the Buyer Group are statements of the Company, regardless of whether the Company's statements describe in part the Sponsor Defendants.  *See* AC ¶¶ 218, 220, 222, 226; *Janus*, 564 U.S. at 142-43; *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 484 (S.D.N.Y. 2012).  Nevertheless, even if any such statements were deemed statements of the Sponsor Defendants, Plaintiff has not made any particularized allegations supporting a plausible inference that any of the Sponsor Defendants had contradictory information at the time any statements to investors were made or, as explained by WuXi, that the statements were false or misleading. *See supra* at 12-16; WuXi Br. at 7-15.

*to any other Filing Person*." Mukhi Decl., Ex. D at 2 (emphasis added); *see In re Fannie Mae*,
891 F. Supp. 2d at 484 (noting that statements "in the offering documents are couched in terms
of 'we' and 'our,' which clearly refer to [the issuer], not [the lead underwriter]").[14] Even to the
extent Plaintiff attempts to allege a scheme liability claim under Rule 10b-5(a) and (c)—which is
not specified in the AC—the Sponsor Defendants were not "disseminators" of any statements
attributed to the Company in the Proxy Statement. While the Supreme Court held that it is
possible to be deemed a "disseminator" of a statement even where not a "maker," the Court
rested its holding on the fact that defendant Lorenzo had undisputedly "[sent] emails he
understood to contain material untruths" directly to potential investors. *See Lorenzo v. SEC*, 139
S. Ct. 1094, 1101 (2019). Here, there is no non-conclusory allegation that the Sponsor
Defendants understood that WuXi's statements contained material falsehoods; at most, the AC
alleges that the Sponsor Defendants were no more than "tangentially involved in dissemination,"
such that "liability would . . . be inappropriate" for any purported misstatements. *Lorenzo*, 139
S. Ct. at 1101.

     *Statements Attributed to Sponsor Defendants.* Just two of the challenged categories of
statements in the Proxy Statement are alleged to contain any statements attributable to the
Sponsor Defendants: categories (3) "Purposes of and Reasons for the Merger," and (4) "Position
of the Buyer Group as to the Fairness of the Merger." Salceda Decl., Ex. C at 34, 49. Even as to
these statements, however, the AC fails to plead that they were false or misleading. *See In re
Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *6-7 (S.D.N.Y. June 28,

---

[14] The fact that the Proxy Statement was incorporated by reference in the Transaction Statement is insufficient to
make the Sponsor Defendants "makers" of the proxy. *Janus* explicitly held that "[o]ne who . . . publishes a
statement on behalf of another is not its maker." *Janus*, 564 U.S. at 142; *see also Gavin/Solmonese*, 68 F. Supp. 3d
at 539 ("Any role [the broker-dealer that issuer had hired to conduct a private offering] played . . . in distributing the
offering materials is insufficient to impose primary liability under *Janus*."); *In re Fannie Mae*, 891 F. Supp. 2d at
484 (dismissing 10b-5 claims against underwriter based on alleged issuer misstatements incorporated by reference
into a prospectus signed by the underwriter).

2017) (granting motion to dismiss where plaintiffs failed to adequately allege the existence of

false and misleading statements); *Koncelik v. Savient Pharm., Inc.*, No. 08 CIV. 10262 (GBD),

2010 WL 3910307, at *9 (S.D.N.Y. Sept. 29, 2010) (same).

Plaintiff "must do more than say that the statements . . . were false and misleading; they

must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164,

174 (2d Cir. 2004). But Plaintiff fails to do so here. The challenged statements regarding the

Buyer Group's "position" on fairness merely list reasons why the Buyer Group believed the

Merger was substantively and procedurally fair, and are not alleged to be false or misleading.

AC ¶¶ 268-70. Specifically, Plaintiff cites statements attributed to the Buyer Group stating that

it believed the Merger was fair because:

- A Special Committee of independent directors and the Company's Board determined the Merger to be fair, AC ¶ 268;

- The consideration and negotiation of the merger agreement was conducted by the Special Committee acting solely to represent the interests of the Unaffiliated Holders, AC ¶ 270;

- The Special Committee retained independent financial advisors and legal counsel, *id.;*

- The Special Committee was empowered to take any and all actions with respect to the proposed Merger and no action could be taken by the Board except upon recommendation of the Special Committee, *id.*;

- The Merger agreement was the product of extensive negotiations between the Special Committee and its advisors and the Buyer Group and its advisors, *id.;*

- The Buyer Group did not participate in or have any influence over the deliberative process or conclusions of the Special Committee or its negotiating position, *id.*

Plaintiff nowhere specifies, however, how or why *any* of these statements, all of which concern

the role played by the Company's Special Committee, were false or misleading in any respect.

Rather, the AC merely alleges generically that "these statements were false and misleading for

the reasons stated in ¶ 202(a)-(d)," which does not even mention the Special Committee or otherwise contain *any* allegations related to these statements by the Buyer Group.

Furthermore, the Buyer Group's "position" as to fairness was plainly a "statement of opinion," and the AC nowhere makes particularized allegations that the Sponsor Defendants did not "actually hold[] the stated belief," that the statements contained untrue "embedded statements of fact," or that the statements misleadingly omitted the basis for those opinions. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326-32 (2015); *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (extending *Omnicare*'s holding to 10b-5 claims).  Rather, Plaintiff only makes the bare and conclusory assertion that "[s]tatements conveying that the Merger was fair or advisable, even if opinions, were false and misleading because they were not actually held by Defendants and failed to disclose information that a reasonable shareholder would assume formed the basis for them."  AC ¶ 203.  But such conclusory statements and "formulaic recitation[s] of the elements of a cause of action" are not entitled to a presumption of truth.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Tongue*, 816 F.3d at 211-13 (affirming grant of motion to dismiss where plaintiff did not make particularized allegations under *Omnicare*); *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 227 (S.D.N.Y. 2018) (under *Omnicare*, plaintiff "must allege *with particularity* that Defendants had actual knowledge of the falsity, or knew the statement did not 'rest on some meaningful inquiry'") (emphasis added) (citation omitted).[15]

---

[15] Nor could Plaintiff plausibly allege that it reasonably relied on the Buyer Group's statements, particularly when the Buyer Group disclosed to investors that it "has interests in the merger that are different from, and/or in addition to, those of the other shareholders or holder of ADSs of the Company by virtue of [the Buyer Group's] continuing interests in the Surviving Company after the completion of the merger."  Salceda Decl., Ex. C at 34; *see In re AIG Advisor Grp. Sec. Litig.*, 309 F. App'x 495, 498 (2d Cir. 2009) (affirming dismissal of a complaint where the defendants "disclosed the existence of the very 'conflict of interest' at the heart of plaintiffs' complaint, barring any claim based thereon"); WuXi Br. at 23 (demonstrating that Plaintiff is not entitled to presumption of reliance).

The only other statement attributed to the Sponsor Defendants in the AC is from the

"Purposes of and Reasons for the Merger" section of the Proxy Statement.  There, too, Plaintiff

fails to allege falsity.  Specifically, that statement provides:

> There is greater domestic competition in many of the segments in which the Company operates.  These changes have increased the uncertainty and volatility inherent in the business models of companies similar to the Company.  As a result, the buyer group is of the view that there is potential for considerably greater short- and medium-term volatility in the Company's earnings.  Responding to current market challenges will require tolerance for volatility in the performance of the Company's business and a willingness to make business decisions focused on improving the Company's long-term profitability.  ***The buyer group believes that these strategies would be most effectively implemented in the context of a private company structure.  As a privately held entity, the Company's management will have greater flexibility to focus on improving long-term profitability without the pressures exerted by the public market's valuation of the Company and its emphasis on short-term period-to-period performance.***

AC ¶ 283 (emphasis added by Plaintiff).  Nowhere does Plaintiff make particularized allegations

that any of the statements concerning the competition, uncertainty, and volatility faced by the

Company were false or misleading.  Similarly, with respect to the Buyer Group's statement of

opinion that WuXi would be best positioned to respond to such issues as a privately held

company, Plaintiff does not allege any particular facts showing that the Sponsor Defendants did

not "actually hold that stated belief," that the statements contained untrue "embedded statements

of fact," or that the statements misleadingly omitted the basis for those opinions.  *Omnicare*, 135

S. Ct. at 1326-32.  While the AC alleges that "[t]hese statements were false and misleading for

the reasons stated in ¶ 202(d)," AC ¶ 284, that paragraph merely contains conclusory allegations

that the "Buyer Group did not intend for WuXi to remain a private Company" and that

Defendants "exaggerated" the business risks that WuXi faced as a public company.  AC

¶ 202(d).  But Plaintiff cites no specific *facts* supporting those assertions that the Sponsor

Defendants had contradictory information, let alone at the time the statements were made.  *See Tongue*, 816 F.3d at 213 (finding statements inactionable because plaintiffs did not adequately plead facts that "conflict[ed] with the information available to [defendants] at the time"); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y. 2009) (dismissing claims where plaintiff failed to plead that defendants had knowledge of specific contradictory information that was available at the time defendants made the challenged statements). Moreover, the Proxy Statement did in fact disclose that "[t]he buyer group may consider re-listing the Company's equity on the Chinese or Hong Kong stock exchanges, which may have higher valuations," Salceda Decl., Ex. C at 52; AC ¶ 226, defeating any claim that, taken "as a whole," any of the Sponsor Defendants' disclosures were false or misleading.  *See DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) (citation omitted) (to determine existence of false or misleading statements or omissions, registration statement must be read "as a whole"); *see also In re GMR Sec. Litig.*, 2013 WL 3781509, at *3 (S.D.N.Y. July 19, 2013) (Nathan, J.) (dismissing Section 10(b) complaint after finding that SEC filings "*did* disclose weakening charter rates and their effect on GMC's revenues" which plaintiffs claimed were omitted) (emphasis in original).

Because Plaintiff has failed to allege that the Sponsor Defendants made any materially false statements or omissions, the Section 10(b) and Rule 10b-5 claims should be dismissed.

## III.   PLAINTIFF'S SECTION 20A CLAIMS AGAINST THE SPONSOR DEFENDANTS FAIL

To state a Section 20A claim, Plaintiff must plead (1) a predicate violation of the Exchange Act and that defendant (2) traded the security "contemporaneously with" Plaintiff, (3) in possession of material, nonpublic information at the time of the trade.  *In re Openwave*

*Sys. Sec. Litig.,* 528 F. Supp. 2d 236, 255 (S.D.N.Y. 2007); 15 U.S.C. § 78t-1(a).  Plaintiff fails to sufficiently plead any of these essential elements.

As shown above, Plaintiff does not adequately plead a predicate violation of the Exchange Act, which alone precludes the derivative Section 20A claims.  *See City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 801 (S.D.N.Y. 2013) ("[F]ailure to allege a violation of the Exchange Act precludes plaintiff's recovery under section 20A.") (citing *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703-04 (2d Cir. 1994)).

Moreover, the contemporaneous trading requirement is not and cannot be satisfied here because Plaintiff does not allege a contemporaneous trade with any of the Sponsor Defendants. *See Openwave*, 528 F. Supp. 2d at 255 (Section 20A requires "that the defendant trade the security at issue 'contemporaneously' with the plaintiff").  The AC indicates that Plaintiff sold its WuXi ADSs to Parent (*see* AC ¶ 371), which, as a result of the Merger, owned 100% of the equity in the surviving private company.  Salceda Decl., Ex. C at i.  Parent, in turn, was wholly owned by Holdco (*id.*), and the Sponsor Defendants beneficially owned a portion of the equity in Holdco.[16]  Thus, all that Plaintiff can allege is, immediately following the Merger, each Sponsor Defendant was a minority shareholder of the shareholder of the entity that ultimately traded. That is insufficient to state a Section 20A claim against the Sponsor Defendants.[17]

Lastly, even if there was a contemporaneous trade with the Sponsor Defendants (and there was not), Plaintiff's claim fails because Plaintiff does not plead the existence of any

---

[16] Salceda Decl., Ex. C at 61 (G&C LP, Boyu, Hillhouse, Ping An, Temasek, G&C IV, and Sequoia will beneficially own approximately 1.4%, 23.7%, 9.3%, 7.4%, 12.1%, 8.8% and 1.9%, respectively, of the equity in Holdco following the completion of the Merger).

[17] In addition, Section 20A liability cannot be predicated on a Section 20(a) violation because Plaintiff does not assert a Section 20(a) claim against any Sponsor Defendant.  *See* AC ¶ 413.  It cannot do so, given that no Sponsor Defendant owns or controls the purchasing entity (Parent), and their respective beneficial ownership of Holdco is clearly a non-controlling minority position.  *See* n.16, *supra*.

alleged inside information, as well as that each Sponsor Defendant possessed such information at the time of the trade.  What Plaintiff claims was the material non-public information—"the Buyer Group's plans to relist the Company's subsidiaries following the Merger at far-higher valuations" (AC ¶ 374)—*was* in fact publicly disclosed.  Salceda Decl., Ex. C at 40; *see also supra* at 15, 23; WuXi Br. at 8-10.  To the extent Plaintiff suggests that the Sponsor Defendants had material inside information regarding the potential re-listing option beyond what was publicly disclosed, it has failed to allege any facts (much less particularized facts) to support such contention.  *See supra* at 13-15; WuXi Br. at 25.  But even had Plaintiff sufficiently pleaded the existence of material non-public information (it has not), Plaintiff resorts to its "lumping" technique and alleges only generally that "Defendants" were in possession of material non-public information (AC ¶ 374), without specifying relevant facts attributable to each of the seventeen "Insider Trading Defendants."  AC ¶ 406.  Such blanket allegations are insufficient to state an insider trading claim under the heightened pleading standards of the PSLRA and Rule 9(b).  *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 763 F. Supp. 2d 423, 487 (S.D.N.Y. 2011) ("[C]laims under § 20A must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA."); *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 Civ. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998) ("[A] complaint may not rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the fraud.").

## CONCLUSION

For the foregoing reasons, and those set forth in the WuXi Brief as applicable, the AC's claims against the Sponsor Defendants should be dismissed with prejudice.

Dated: October 7, 2019
New York, New York

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By:   /s/ Rahul Mukhi
       Roger A. Cooper (racooper@cgsh.com)
       Rahul Mukhi (rmukhi@cgsh.com)
       E. Pascale Bibi (pbibi@cgsh.com)

       One Liberty Plaza
       New York, NY 10006
       T:  (212) 225-2000

       *Attorneys for Defendant Temasek Life Sciences*
       *Private Limited*


**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By:   /s/ Ignacio E. Salceda
       Ignacio E. Salceda, *admitted pro hac vice*
       Boris Feldman, *admitted pro hac vice*
       WILSON SONSINI GOODRICH & ROSATI, P.C.
       650 Page Mill Road
       Palo Alto, CA 94304
       Telephone: (650) 493-9300
       isalceda@wsgr.com
       Boris.Feldman@wsgr.com

       Gideon A. Schor
       Paul C. Gross
       WILSON SONSINI GOODRICH & ROSATI, P.C.
       1301 Avenue of the Americas, 40th Floor
       New York, NY 10019-6022
       Telephone: (212) 999-5800
       gschor@wsgr.com
       pgross@wsgr.com

       *Attorneys for Defendants Boyu Capital Fund II,*
       *L.P., Hillhouse Capital Fund II, L.P., G&C*
       *Partnership L.P., G&C IV Limited, Ping An Life*
       *Insurance Company of China, Ltd., and Sequoia*
       *Capital China Growth Fund III, L.P.*